ROSE & McDONALD *v.* WEINBERGER & COMPANY.

1. In a contract for the sale of a car of fruit which is "in transit," the buyer knowing that the seller is not the shipper, and had nothing to do with the packing or loading of the car, being himself a buyer from the actual shipper, the term "buyer's risk" places upon the buyer all risk of damage growing out of the fact that the car was defective or the fruit improperly packed therein. .

2. If, however, in a contract of the character above referred to, the seller is himself the owner and shipper, the term "buyer's risk" would not require the buyer to assume the risk of any damage which might result from a defective car or improper packing. Especially is this true where the seller and shipper knew that the car was defective and the fruit improperly packed.

Argued May 18, — Decided July 27, 1899.

Complaint. Before Judge Reid. City court of Atlanta. September term, 1898.

*Rosser & Carter*, for plaintiffs in error.
*Maddox & Terrell*, contra.

FISH, J. Weinberger & Company, residents of New Orleans, sued Rose & McDonald upon a contract for the purchase of a car-load of fruit. The contract was contained in certain letters and telegrams which passed between the parties, and was, in brief, that the plaintiffs sold the defendants a car-load of fruit which was in transit from certain shippers in California to the plaintiffs; the terms of the sale being "f. o. b. California, buyer's risk, California weights. Rate $1.50 hundred, refrigerator charges $185." The petition alleged that the amount due by defendants, including refrigerator charges, was $891.65. In defense to the action the defendants pleaded that by the terms "f. o. b. California, buyer's risk," it is meant and understood, and was meant and understood between the parties to the contract, that plaintiffs should securely and properly pack the fruit in a proper and suitable car; and that if under the terms of the contract any damage should result from such failure to properly pack or from the defective condition of the car, the plaintiffs should rightfully be responsible therefor. It is alleged that the fruit was not properly packed and that the car was defective, and that as a consequence the fruit was worth but one third of the price contracted to be paid

for it when it reached Atlanta, and that these defects were known or should have been known to the plaintiffs when they made the sale. The defendants filed another plea in which they alleged, that the contract sued on was made by the plaintiffs as agents for Pinkham & McKevitt, their consignors from California; that the shipping of the fruit from California was at the risk of Pinkham & McKevitt and plaintiffs; and that if the goods were shipped at the risk of these defendants, they assumed such risks only after the contract between the plaintiffs and defendants was entered into, and then the risk assumed was only that of transportation; that by the custom of the California fruit trade it was the duty of the sellers and shippers to furnish a proper car in which to ship fruit and to properly pack the fruit, and that it was the duty of plaintiffs not only to furnish a proper car but to properly pack the fruit, which they failed to do. The plaintiffs made a motion to strike the pleas of the defendants, and after hearing such motion the judge passed an order reciting that, it being admitted in the pleas that the defendants entered into the contract sued on, and they admitting in open court that the words "f. o. b." as used in the contract meant "free on board," the pleas were stricken as not setting forth any sufficient matter of defense. To the granting of this order the defendants excepted. The court then directed a verdict in favor of the plaintiffs for the full amount sued for, with interest; and to this also the defendants excepted. It will be observed that the first of the pleas above referred to treats the plaintiffs as the owners of the car of fruit at the time the contract was entered into, and alleges facts which it is claimed would be a bar to the action by the plaintiffs as owners. On the other hand, the second plea sets up a defense against the plaintiffs as agents of the real owners, who were alleged to reside in California.

1. We will deal with these pleas in their order. The plea which sought to set up a defense against the plaintiffs as owners was properly stricken. The defendants' agents in Atlanta wrote to plaintiffs, asking if they had any fruit "in transit." Plaintiffs replied by wire that they had a car, and made an offer to sell it. Defendants' agents wired in reply an acceptance of

the offer if certain changes were made, and the plaintiffs replied agreeing to the contract so changed. Upon this the contract of sale became complete, and the liability of each of the parties thereto is to be determined from the contract so made. Viewed in the light of the fact that the car of fruit was bought in transit and that the plaintiffs knew this fact, what was meant by the parties when they used the terms "f. o. b. California, buyer's risk"? It was admitted that f. o. b. meant "free on board," and hence under this part of the contract the defendants were to be responsible for the cost of shipment from California to Atlanta. Bouvier's Law Dic., F. O. B. When the contract of sale became complete the defendants assumed all risk of loss or damage occurring thereafter. 1 Benj. Sales, § 319, and cases cited. Treating the plaintiffs as the owners of the property, the defendants by their contract agreed to accept the car in whatever condition it might be when the contract was entered into. The car was in transit, having been shipped from California to the plaintiffs. They had no opportunity to inspect it, they knew nothing about its condition; and we think that by their proposal to the defendants they meant to say: We have a car of fruit in transit from California. We have not seen it, nor do we know anything about its condition. We will sell you this car at a specified price, but it must be understood that we do not warrant the condition of the fruit, and expect you to assume all risks of loss or damage that may arise. We sell you this car, which we agree is fruit of a certain kind, and if the car is found to be loaded with this particular kind of fruit, then you must accept it in whatever condition it may be when it reaches you. Such seems to us to be the meaning of the contract. If by buyer's risk the plaintiffs meant that the defendants would assume only such risk of loss or damage as might arise after the contract was entered into, the words might as well have been left out of the contract; for, as we have seen, the law cast upon the defendants all such risks thereafter arising. If these words have any significance at all, their plain common-sense meaning is that the defendants must assume all risks — defective car, improper packing, decay of fruit, etc., and the only

defense left them is that they did not in fact get what they bought. This was the only thing that the plaintiffs warranted; everything else was at the risk of the purchasers. There is no allegation that the car contained other than the kind of fruit contracted for; and the defendants by their contract having bought fruit in a decayed condition, they have no just cause of complaint.

2. Ought the same meaning to be attached to "buyer's risk," if the contract was made with the owners of the fruit, who packed the same for shipment? One of the pleas sets up that the plaintiffs were not the owners but were mere agents of the owners, who were also the shippers in California. While an agent may in his own name maintain a suit on a contract so made for the benefit of his principal (Civil Code, § 3037, par. 3), still in such a suit any defense will be allowed to the defendant which he could lawfully set up against the principal if the suit had been brought in his name. A holding that, relatively to the shippers and owners, buyer's risk meant that the purchaser was to assume risks of defective car and improper packing, in a case like the present one, would allow the owner to perpetrate a fraud on the buyer. Under the allegations in the plea, the owner knew just what condition the car was in — knew that it was not suited for carrying fruit — knew that the fruit was improperly packed — and knew that it would reach its destination in a damaged condition. While the purchaser might be willing to assume any risks of damage that might arise to the fruit when properly shipped, it is hardly to be presumed that he would enter into a contract to buy a car of fruit which was absolutely certain to be decayed when it reached him. That by the use of the term buyer's risk the parties intended that the purchaser must take the risks of transportation, but that all risks incident to improper packing in the car at the initial point of shipment were to be assumed by the shipper, seems clear when we take into consideration the long distance the fruit was to come, its perishable nature, and the absolute necessity that it should be properly packed. The plea distinctly alleges that it was the custom of the California fruit trade that the shipper should see that the fruit was

properly packed in a suitable car, and that buyer's risk meant that the defendants were to take the risk only after the title had passed to them; and construing the plea as a whole, we think it set up a good defense as against the owners of the property. If it should be determined at the trial that the plaintiffs were the owners at the time the contract was entered into, the defendants under their contract would have no defense to the action. If, on the other hand, it should be determined that Pinkham & McKevitt were the owners, then the defendants would be let into the defenses sought to be set up against the plaintiffs as agents of these owners.

*Judgment reversed. All the Justices concurring.*